**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHNNY C. BORIZOV,<br><br>Plaintiff,<br><br>v.<br><br>WENDY OLSEN-FOXON, WALTER NICHOLSON, RANDY PFISTER, JOEL STARKEY, and VICTOR PEREZ,<br><br>Defendants. | No. 19 C 7549<br><br>Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER

This case concerns an incident at Stateville Correctional Center on December 10, 2017. Plaintiff Johnny C. Borizov alleges that Defendant Wendy Olsen-Foxon, a prison medical technician, sexually assaulted Plaintiff as she provided treatment to him during a medical episode. Plaintiff further alleges that Defendants Walter Nicholson, Randy Pfister, Joel Starkey, and Victor Perez were deliberately indifferent to his pleas by failing to investigate his reports against Olsen-Foxon.

Now before the Court is Defendants' motion for summary judgment. (Dkt. 256.) For the reasons that follow, Defendants' motion is granted in part and denied in part: Plaintiff's claims against Defendants Walter Nicholson, Randy Pfister, Joel Starkey, and Victor Perez fail as a matter of law; but Plaintiff's claim against Defendant Olsen-Foxon survives summary judgment.

## I. BACKGROUND

On December 10, 2017, Johnny C. Borizov ("Plaintiff"), an inmate at Stateville Correctional Center (part of the Illinois Department of Corrections ("IDOC")), suffered a hypoglycemic attack while in his prison cell. (Dkt. 267 ¶ 1.) Three nurses, a correctional officer, and Defendant Wendy Olsen-Foxon (a "Correctional Medical Technician") responded to Plaintiff's cell. (*Id.* ¶ 2.) Olsen-Foxon turned Plaintiff onto his side and administered two injections of glucagon in rapid succession, first in his left arm and another in his left buttock. (*Id.*) One of the nurses commented that Plaintiff had a "very hairy ass" and the nurses and Defendant Olsen-Foxon laughed. (*Id.*)

Defendant Olsen-Foxon then grabbed and pulled Plaintiff by the genitalia and repeatedly thrust an instant glucose tube into Plaintiff's rectum. (*Id.* ¶ 3.) Defendant Olsen-Foxon simultaneously let go of Plaintiff's genitalia, using that hand to repeatedly strike Plaintiff's face. (*Id.*) Plaintiff, conscious and awake during the incident, attempted to resist as Defendant Olsen-Foxon continued inserting the glucose tube into his rectum for approximately two minutes. (*Id.* ¶ 4.)

Before Defendant Olsen-Foxon left his cell, Plaintiff said, "why, why did you do that." Defendant Olsen-Foxon laughed and then left the cell. (*Id.*) Plaintiff experienced pain, cuts, bleeding, and irritation in the rectal area that lasted for weeks after the December 10, 2017 incident. (*Id.* ¶ 8.) Stateville's medical protocols for the treatment of hypoglycemia do not provide for the rectal administration of glucose in any setting. (*Id.* ¶ 11.) Defendant Olsen-Foxon agrees there is nothing in any written

Stateville medical protocol, training, or policy that authorizes the rectal administration of glucose.[1] (*Id.* ¶¶ 3, 11–16.)

Plaintiff filed Grievance 1482, concerning the alleged sexual assault, the next day (December 11, 2017). (Dkt. 270 ¶ 33.) Grievance 1482 was stamped as received on January 4, 2018. (*Id.*) Plaintiff filed Grievance 1482 on an "emergency" basis "due to a substantial risk of imminent personal injury or other serious or irreparable harm to self." (*Id.*)

On December 21, 2017, Dr. Laura Daniels, a clinical psychologist at Stateville, saw Plaintiff during a mental health evaluation session where they discussed the incident. (Dkt. 270 ¶ 9.) Based on Plaintiff's recounting of the incident, Dr. Daniels submitted a Prison Rape Elimination Act ("PREA") incident report the same day. (*Id.* ¶¶ 9–10.) Emailed notice of the incident was provided that same day to fourteen different prison administrators, including all four Correctional Defendants. (Dkt. 266 ¶ 26.)

Defendant Randy Pfister, who at the time was the Warden of Stateville, received notice of the incident by December 21, 2017. Pfister reviewed and denied Plaintiff's emergency request for review of Grievance 1482 on January 5, 2018. Pfister then initiated a PREA inquiry into Plaintiff's claims. (Dkt. 267 ¶ 18.)

IDOC's Sexual Abuse and Harassment Prevention and Intervention Program

---

[1] Defendants dispute this and assert that "Defendant Olsen-Foxon learned this procedure from other Medical Technicians that worked at the facility." (Dkt. 257 ¶ 14.) Plaintiff counters by pointing out that "Defendant Olsen-Foxon could not identify any [Medical Technician] by name who did so." (Dkt. 266 ¶ 14.)

defines "sexual abuse of [a]n offender by a staff member" as "penetration of the anal or genital opening, however slight, by hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member has the intent to abuse, arouse, or gratify sexual desire[.]" (Dkt. 267 ¶ 17.) The IDOC policy also defines "sexual harassment" to include verbal comments "of a sexual nature to an offender by staff, including . . . sexually suggestive or derogatory comments about body or clothing." (*Id.*)

Defendant Victor Perez, the corrections officer assigned to investigate Plaintiff's grievances, testified that Defendant Olsen-Foxon's insertion of a glucose tube into Plaintiff's rectum constituted sexual abuse under IDOC's policy. (*Id.*) Perez also testified that Defendant's laughing at Plaintiff's expense constituted sexual harassment under IDOC's policy. (*Id.*)

PREA and IDOC policies require that "[a]ny offender who alleges to be a victim of sexual abuse shall be: Promptly separated and offered protection from the alleged abuser and the incident shall be investigated." (*Id.* ¶ 30.) But the Correctional Defendants did not separate Plaintiff from Defendant Olsen-Foxon. (*Id.* ¶ 31.) As such, Plaintiff continued to have interactions with Defendant Olsen-Foxon after the December 10, 2017 incident. (*Id.*)

As part of his investigation, Defendant Perez interviewed Plaintiff and his cellmate, wrote the PREA report, and reviewed its supporting materials. (*Id.* ¶ 20.) Defendant Perez concluded that Plaintiff's allegation of sexual abuse was unsubstantiated after finding a website titled "nursing.unboundmedicine.com" that

apparently stated that glucose could be administered through the anus. (Dkt. 266 ¶¶ 33, 36.) Defendant Joel Starkey, Stateville's Chief of Investigations, signed off on the PREA report findings. (Dkt. 267 ¶ 21.) Defendant Nicholson, then Assistant Warden of Stateville, also signed off on the Plaintiff's PREA Inquiry Report. (*Id.* ¶ 19.) The PREA report was dated February 22, 2018. (*Id.* ¶ 38.)

Plaintiff testified, however, that he neither received nor reviewed the PREA report dated February 22, 2018 until after this litigation began. (*Id.* ¶ 22.) Plaintiff has further testified that he was not informed of the outcome of the PREA investigation. (*Id.* ¶ 38.)

Grievance 1482, filed on December 11, 2017, was reviewed on May 9, 2018. (*Id.* ¶ 34.) The review concluded, "Your allegation is/was currently being investigated. You will be notified of the outcome of the investigation. Recommendation: Grievance is MOOT." On May 11, 2018, the Chief Administrative Officer ("CAO") of IDOC's Administrative Review Board ("ARB") concurred with the Grievance Officer's finding. (*Id.* ¶ 35.) On Plaintiff's appeal, the ARB itself found the allegations of Grievance 1482 were "moot," stating: "Your allegation is currently being investigated. You will be notified by the facility of the outcome of the investigation." In this response, ARB did not inform Plaintiff of any next steps he might take.[2] (*Id.* ¶ 37.)

Plaintiff filed grievances in 2018 against all of the Correctional Defendants,

[2] Defendants respond that Plaintiff did receive instructions on next steps because the PREA report (that they claim Plaintiff received) states as follows: "the investigation findings may be grieved in accordance with [the grievance procedures outlined in] 20 Ill. Adm. Code 504 and Administrative Directives 04.01.114 and 04.01.115." (Dkt. 270 ¶ 37.)

complaining, in part, about the slow handling of the investigation, about the fact that Defendant Olsen-Foxon continued to work at Stateville and have access to Plaintiff, about his ongoing fear of Defendant Olsen-Foxon, and that Correctional Defendants did not separate Defendant Olsen-Foxon from Plaintiff despite Plaintiff's requests that she be kept away from him and fired. (Dkt. 266 ¶¶ 40–41.)

*Procedural History*

Plaintiff originally brought this lawsuit as a pro se litigant on November 14, 2019, pursuant to 42 U.S.C. § 1983, alleging that Defendant Olsen-Foxon used improper force in violation of the Eight Amendment (Count I). (Dkt. 1.) The Court allowed the case to proceed against Defendant Olsen-Foxon, finding that Plaintiff adequately stated a claim of improper force under the Eight Amendment. (Dkt. 5.)

After he received an appointed lawyer, Plaintiff filed an amended complaint adding an additional Section 1983 claim (Count II), alleging that two former Stateville Wardens (Defendants Nicholson and Pfister) and two IDOC Investigators (Defendants Starkey and Perez) showed "deliberate indifference to a substantial risk of serious harm" by failing to adequately investigate Plaintiff's claims against Defendant Olsen-Foxon and to separate Plaintiff from her. (Dkt. 139.)

Now before the Court is Defendants' motion for summary judgment. (Dkt. 256.) Correctional Defendants argue they are entitled to summary judgment because the claim, amongst other things, is barred by the statute of limitations. (Dkt. 258 at 2.) Defendant Olsen-Foxon argues that summary judgment is warranted because Plaintiff failed to exhaust administrative remedies and, on the merits, Olsen-Foxon

did not use improper force in violation of the Eighth Amendment. (Dkt. 259 at 1.)

## II. LEGAL STANDARD

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## III. DISCUSSION

### A. Plaintiff's Claims Against Correctional Defendants Are Barred by the Statute of Limitations

Claims brought under Section 1983 are subject to a two-year statute of limitations under Illinois law. *See Bryant v. City of Chicago*, 746 F.3d 239, 241 (7th Cir. 2014). But the statute of limitations begins to run only "when the plaintiff discovers that he has been *injured* and who *caused* the injury." *Barry Av'n Inc. v.*

*Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (emphasis in original) (quotation marks omitted); *United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010).

As such, the statute of limitations began running against Plaintiff's Count II claims when Plaintiff discovered the Correctional Defendants had been deliberately indifferent. Plaintiff's deliberate indifference claim has two elements: "(1) 'the harm to which the prisoner was exposed must be an objectively serious one'; and (2) judged subjectively, the prison official 'must have actual, and not merely constructive, knowledge of the risk.'" *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018).

As Plaintiff states, there is no "dispute that Plaintiff was exposed to an 'objectively serious harm.'" (Dkt. 265 at 11.) The core dispute, however, is whether and to what extent Plaintiff realized in 2018 that the Correctional Defendants had any "actual, first-hand knowledge" of the risk Defendant Olsen-Foxon posed to Plaintiff. (Dkt. 265 at 3.)

Plaintiff concedes that he filed grievances in 2018 against all of the Correctional Defendants, complaining, in part, about the slow handling of the investigation, about the fact that Defendant Olsen-Foxon continued to work at Stateville and have access to Plaintiff and could harm Plaintiff, about his ongoing fear of Defendant Olsen-Foxon, and that Correctional Defendants did not separate Defendant Olsen-Foxon from Plaintiff despite Plaintiff's requests that she be kept away from him and fired. (Dkt. 266 ¶¶ 40–41.)

Defendant argues that these admissions prove that Plaintiff's deliberate

indifference claim against Correctional Defendants began accruing in 2018, because Plaintiff both understood that Correctional Defendants knew about the alleged sexual assault and expressed "his ongoing fear of Defendant Olsen-Foxon," yet "Correctional Defendants did not separate Defendant Olsen-Foxon from Plaintiff despite Plaintiff's requests that she be kept away from him and fired." (Dkt. 266 ¶¶ 40–45.)

Plaintiff responds that these admissions do not necessarily mark the accrual of the deliberate indifference claim because Plaintiff did not think that the Defendants had any "actual, first-hand knowledge . . . that that the actions Defendant [Olsen-Foxon] took were contrary to accepted medical standards of care at Stateville." (Dkt. 130 at 3.) Instead, Plaintiff argues that his claim accrued on May 24, 2022, when Plaintiff deposed Defendant Olsen-Foxon. (Dkt. 265 at 4–5.) Plaintiff argues that only then did he realize Correctional Defendants had actual knowledge of the risk posed to Plaintiff because Correctional Defendants had conducted secret interviews with doctors and Defendant Olsen-Foxon that revealed that Defendant Olsen-Foxon's conduct did not adhere to the standard of the care. (*Id.*)

Plaintiff's arguments are unpersuasive. To begin, Plaintiff's arguments on statute of limitations grounds are undercut by Plaintiff's arguments on the merits. (Dkt. 265 at 12 ("Each Defendant had actual knowledge of Plaintiff's sexual assault claim through the investigation and review of Plaintiff's grievances . . . [and] knew the substantial risk of harm to Plaintiff . . . . Nevertheless, Defendants took no action to avoid that harm.").)

More importantly, Plaintiff understood that Correctional Defendants had subjective knowledge of the risk Defendant Olsen-Foxon posed to Plaintiff as early as 2018. Indeed, Plaintiff filed grievances against each of the Correctional Defendants in 2018 asserting that the Defendants failed to protect him, "let a sexual predator . . . roam the halls of IDOC," "didn't take action," and "didn't care about [his] life." (Dkt. 266 ¶ 40–45; Dkt. 257-2 at 8, 11.) Even more, Plaintiff's grievances alleged "they all were in cahoots," that "[y]ou guys know what Wendy Olsen did to me," and that "you're just trying to hide it." (Dkt. 257-2 at 8, 13.)

Plaintiff tries to split hairs by arguing that knowledge of the constitutional injury did not arise with the original grievances because Plaintiff was merely voicing "frustration with the allegedly ongoing investigation into his claims, his ongoing fear of Olsen-Foxon, and his repeated requests for help from authority figures at Stateville after his sexual assault." (Dkt. 265 at 6.) Plaintiff contends that this fear and frustration did not amount to knowledge of a constitutional injury. (*Id.* (citing *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (deliberate indifference claim requires plaintiff to show prison official has "a sufficiently culpable state of mind." (quotation marks omitted))).) Rather, Plaintiff insists that the deliberate indifference claim did not accrue then because "Plaintiff had no reason to believe that Defendants Perez, Starkey, Nicholson or Pfister had any actual, first-hand knowledge that Defendant Olsen-Foxon's actions were contrary to Stateville's medical standards of care. (Dkt. 265 at 4.)

But Plaintiff's argument that he did not realize at the time Correctional

Defendants had actual knowledge that Olsen-Foxon's actions were contrary to medical standards of care has minimal or no bearing on whether Plaintiff realized the Correctional Defendants had a sufficiently culpable mind. This is especially so because the undisputed evidence reveals that Plaintiff, in no uncertain terms, accused Correctional Defendants of having a sufficiently culpable mind in failing to protect Plaintiff from Defendant Olsen-Foxon. As discussed, Plaintiff filed grievances against the Correctional Defendants that accused them of failing to protect Plaintiff from a "sexual predator," stated that they "didn't care about his life," that they "kn[ew] what Wendy Olsen did to me," and asserted that they were all "in cahoots." (Dkt. 266 ¶ 40–45; Dkt. 257-2 at 8, 11, 13.)

Finally, Plaintiff cites this Court's previous decision that allowed Plaintiff to file his amended complaint asserting Count II against Correctional Officers despite Defendants' objections that Count II was time-barred. (Dkt. 138 (holding that Plaintiff's claims were not time-barred on the face of Plaintiff's amended complaint).) But discovery revealed the undisputed evidence cited in this opinion that was neither available to the Court when it made its July 25, 2023, order nor flagged in either Plaintiff's or Defendants' briefing. (*See generally* Dkt. 122; Dkt. 128; Dkt. 130.)

In sum, Plaintiff's admissions in discovery prove fatal to his claim against Correctional Defendants. Plaintiff realized as early as 2018 that the Correctional Defendants were deliberately indifferent to his grievances against Defendant Olsen-Foxon, which is when his claim accrued. The two-year statute of limitations has long since passed. Accordingly, summary judgment is granted to Correctional Defendants

on Count II.

## B. Defendant Olsen-Foxon is Not Entitled to Summary Judgment Because Genuine Disputes of Material Facts Pervade the Record

### *1. Plaintiff Has Established Exhaustion of Administrative Remedies*

Defendant Olsen-Foxon first represented to this Court "after conducting initial fact discovery" that "Plaintiff has exhausted his administrative remedies." (Dkt. 36 at 1; Dkt. 37 ("Defendant indicates that she will withdraw the failure to exhaust affirmative defense.").) Yet Defendant now argues that Plaintiff failed to exhaust administrative remedies in support of her motion for summary judgment.

In the summary judgment posture, "a defendant prison official must demonstrate that the plaintiff prisoner failed to exhaust the applicable grievance procedures and that those procedures were available to him as a matter of law." *Jones v. Lamb*, 124 F.4th 463, 467 (7th Cir. 2024). As set forth in Defendants' brief, "Illinois offers two paths for inmates who wish to complain about prison conditions: (1) a normal, non-emergency path, and (2) an emergency path." (Dkt. 258 at 7–8.) Under the non-emergency path, Illinois has created a three-step process. (*Id.* (citing 20 Ill. Adm. Code 504.800 *et seq.*).) Step one requires the inmate to submit a grievance to his or her counselor "within 60 days after the discovery of the incident" detailing the who, what, where, and when. (*Id.* (citing 20 Ill. Adm. Code 504.810(a), (c)).) If the inmate is dissatisfied with the counselor's response, the inmate must file a grievance with the grievance officer, "who will then make a report of findings and recommendations in writing to the chief administrative officer (i.e., the warden)." (*Id.* (citing 20 Ill. Adm. Code 504.810(a), 504.830(e)). Step three requires the inmate to

appeal any denied grievance to the Illinois Administrative Review Board ("ARB"). (*Id.* (citing 20 Ill. Adm. Code 504.850(a)).) The ARB then has six months to respond. (*Id.* (citing 20 Ill. Adm. Code 504.850(e)).) Once the inmate receives a final determination from the ARB then administrative remedies are exhausted. (*Id.* (citing 20 Ill. Adm. Code 504.850(e)).)

Plaintiff has produced sufficient evidence at summary judgment to establish he exhausted administrative remedies because grievance procedures were not available to him. *Jones*, 124 F.4th at 467. Plaintiff initially filed a grievance (Grievance 1482) against Defendant Olsen-Foxon on December 11, 2027, just one day after the incident. (Dkt. 267 ¶ 33.) Plaintiff's request for emergency review of this grievance was denied, which meant Plaintiff was required to exhaust the "normal, non-emergency path." (*Id.*; Dkt. 258 at 7–8.)

On December 21, 2017, Plaintiff also reported the incident to his counselor, Dr. Laura Daniels, who submitted an incident report. (Dkt. 267 ¶¶ 9–10.) Correctional Defendants were notified that same day and launched a PREA investigation into the incident. (Dkt. 266 ¶ 29; Dkt. 267 ¶¶ 18–21.) The investigation culminated in a PREA inquiry report on February 22, 2018, where Correctional Defendants concluded that Plaintiff's sexual assault grievance was "unsubstantiated." (Dkt. 267 ¶¶ 19–21; Dkt. 266 ¶37.) But Plaintiff never received a copy of that report until after this litigation began. (Dkt. 267 ¶¶ 22, 32, 34–37; Dkt. 266 ¶ 39.)[3]

[3] Defendant Olsen-Foxon vigorously disputes that Plaintiff never received a copy of the PREA report. (Dkt. 271 at 7–8; Dkt. 272 at 2.) But at this stage of proceedings, Defendant has not produced any objectively verifiable evidence which allows this Court to disregard Plaintiff's sworn testimony. For example, Defendant points to Plaintiff's testimony that

Nearly four months later, a grievance officer responded that Plaintiff's Grievance 1482 "allegation is/was currently being investigated," that Plaintiff would "be notified of the outcome of the investigation," and that the grievance was therefore "moot." (Dkt. 267 ¶ 34.) The Chief Administrative Officer concurred with the grievance officer. (*Id.* ¶ 35.) Plaintiff timely appealed this determination, but the ARB affirmed that Plaintiff's claim was " 'moot', stating: '[y]our allegation is currently being investigated. You will be notified by the facility of the outcome of the investigation.' " (*Id.* ¶ 37.)

Defendant Olsen-Foxon nonetheless argues that Plaintiff failed to exhaust administrative remedies because the mootness determination was not on the merits and Plaintiff never filed a second grievance challenging the outcome of the investigation. (Dkt. 271 at 8–9.) Defendant's argument fails.

Plaintiff was not required to file a second grievance challenging the outcome of the investigation when Plaintiff produced evidence that he never received the PREA report to begin with. (Dkt. 267 ¶¶ 22, 32, 34–37; Dkt. 266 ¶ 39.) *See Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." (quotation omitted)); *Hacker v. Dart*, 62 F.4th 1073, 1081 (7th Cir. 2023) (remedies were unavailable where inmate was told grievance was referred for investigation). As a result, even if Defendant is correct that the

---

Plaintiff knew about the PREA report. (Dkt. 271 at 7–8.) Defendant then argues that Plaintiff must have received a copy. (*Id.*) But such an inference in favor of Defendant would be improper at summary judgment. On the contrary, the record supports an inference that Plaintiff knew about the PREA report because Defendant Perez told Plaintiff about it, although Plaintiff never actually received a copy of the report. (Dkt. 257-2 at 15.)

mootness determination did not rule on the results of the investigation, it nonetheless effectively served as a final determination against Plaintiff. *See Jones*, 124 F.4th at 468 (reversing a district court's grant of summary judgment on exhaustion where a prisoner attested that he received no responses to his grievances).

In sum, there is sufficient evidence to allow a reasonable inference that Plaintiff has exhausted administrative remedies.

### 2. *Genuine Disputes of Material Fact Exist as to Plaintiff's Eighth Amendment Claim Against Olsen-Foxon*

Plaintiff's Eighth Amendment claim against Defendant Olsen-Foxon requires Plaintiff to prove two elements: (1) that the conduct was "objectively, sufficiently serious" and (2) that the prison official had "a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Defendant does not dispute that the conduct was "objectively, sufficiently serious"; instead, the core dispute is whether Defendant's actions constituted "[u]nwanted touching of a person's private parts, *intended to humiliate the victim or gratify the assailant's sexual desires*," or whether Defendant's actions were done for the bona fide purpose of medical treatment. (Dkt. 259 at 5 (citing *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (emphasis added)).)

Direct evidence of subjective intent is rare; as such, courts should assess the circumstantial evidence to determine whether a reasonable juror could find the prison official had a sufficiently culpable state of mind. *See Washington*, 695 F.3d at 643–44 (reversing district court's grant of summary judgment on an Eighth Amendment claim b ecause a jury could reasonably infer a prison guard's requisite intent by his

unnecessary fondling of plaintiff's genitals during pat down).

Plaintiff's Eighth Amendment claim survives summary judgment because Plaintiff has produced sufficient evidence that Defendant Olsen-Foxon used a glucose stick for an improper purpose. To begin, after Defendant administered two glucose shots, one in Plaintiff's arm and another in Plaintiff's buttocks, Defendant started laughing when another nurse said that Plaintiff had "a hairy ass." (Dkt. 267 ¶ 2.) Before administering a third shot, Defendant grabbed Plaintiff's genitalia and repeatedly thrust a glucose stick into Plaintiff's anus and forcefully moved the stick up-and-down for two minutes which caused the walls of his anus to tear and bleed for days. (*Id.* ¶¶ 3, 4, 8.)

Defendant's alleged abuse did not stop at that point. After Defendant released her hold of Plaintiff's genitalia, Defendant used that hand to strike Plaintiff's face multiple times. (*Id.* ¶ 3.) Defendant Perez, the lead investigator for the PREA inquiry, conceded that Defendant Olsen-Foxon's insertion of the glucose stick in Plaintiff's anus and Defendant's laughing at Plaintiff's expense constituted sexual abuse and harassment under IDOC policies. (Dkt. 267 ¶ 17.) This evidence alone is sufficient to preclude summary judgment on Plaintiff's claims. *Washington*, 695 F.3d at 643–44.

Defendant's argument that the anal insertion was done for a medical purpose presents a genuine dispute of material fact. Although Defendant claims that she learned glucose anal administration from other medical technicians at Stateville, Plaintiff has provided overwhelming evidence that no policy, training, or protocol at the prison authorized the anal administration. (Dkt. 267 ¶¶ 3, 11–16.) Moreover, even

if Defendant was correct that anal administration of glucose was permitted, Defendant has failed to explain why it was medically necessary for her to thrust the tube into Plaintiff's anus repeatedly for two minutes with such vigor that it caused bleeding for days; grab his genitals; and hit him in the face. (*Id.* ¶ 8.) *See Johnson v. Dart*, No. 20-cv-0113, 2022 WL 17404499, at *4 (N.D. Ill. Dec. 2, 2022) (summary judgment was improper where "defendant's treatment decision departed so radically from accepted professional judgment, practice, or standards that a jury may reasonably infer that the decision was not based on professional judgment" (quoting *Davis v. Kayira*, 938 F.3d 910, 915 (7th Cir. 2019))).

To be sure, Defendant disputes virtually all of the foregoing factual predicates. But all of Plaintiff's proffered facts must be taken as true at this stage. Defendant will nonetheless be free to cross-examine Plaintiff at trial and elucidate the truthfulness (or untruthfulness) of Plaintiff's testimony for the jury. Accordingly, summary judgment is denied on Count II.

## IV. CONCLUSION

Defendants' motion for summary judgment is granted as to Correctional Defendants and denied as to Defendant Olsen-Foxon.

SO ORDERED in No. 19 C 7549.

Date: September 30, 2026

JOHN F. KNESS
United States District Judge